The STATE ex rel. GOOD

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Good v. Indus. Comm.,* 162 Ohio App.3d 773, 2005-Ohio-4060.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–1017.

Decided Aug. 9, 2005.

Gallon & Takacs Co., L.P.A., and Theodore A. Bowman, for relator.

Jim Petro, Attorney General, and Dennis H. Behm, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Marshall & Melhorn, L.L.C., Michael S. Scalzo, and John A. Borell Jr., for respondent Sauder Manufacturing Company.

---

SADLER, Judge.

{¶ 1} Relator, Timothy S. Good, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order to the extent that it denies relator's request for temporary total disability ("TTD") compensation beginning April 10, 2003, and to enter an order that complies with *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. On March 31, 2005, the magistrate issued a decision including findings of fact and conclusions of law and therein recommended that this court grant the writ of mandamus. (Attached as an appendix.) The magistrate found that the portion of the commission's order that addresses the issue of TTD compensation was ambiguous and did not comply with the mandates set forth in *Noll.* Respondent Sauder Manufacturing Company timely filed objections to the magistrate's decision, which objections are now before the court.

{¶ 3} In its objections, Sauder argues that the commission properly denied relator's request for TTD compensation. Sauder claims that the medical evidence casts doubt on relator's veracity and the seriousness of his injury. Sauder argues that the staff hearing officer's findings clearly support his rationale that (1) Sauder made work available to relator which was within his capabilities, (2) relator had performed this work through April 9, 2003, and (3) this work was well within his physical capabilities to perform subsequent to April 9, 2003.

{¶ 4} Sauder fails to raise any new issues in its objections and simply reargues its contentions presented to and sufficiently addressed by the magistrate. Because the commission's order fails to adequately set forth its basis for its decision to deny TTD compensation, we find that the magistrate correctly determined that the order does not comply with the requirements set forth in *Noll.*

{¶ 5} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Sauder's objections, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We, therefore, adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, Sauder's objections to the magistrate's decision are overruled, and the requested writ of mandamus is

hereby granted. We issue a writ of mandamus compelling the commission to vacate the portion of its order that addressed the issue of TTD compensation and to enter an amended order granting or denying relator's application, with an explanation of its decision in accordance with *Noll.*

Objections overruled;
writ granted.

BRYANT and BOWMAN, JJ., concur.

BOWMAN, J., retired, of the Tenth Appellate District, sitting by assignment.

## APPENDIX

KENNETH W. MACKE, Magistrate.

{¶ 6} In this original action, relator, Timothy S. Good, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order to the extent that it denies relator's request for temporary total disability ("TTD") compensation beginning April 10, 2003, and to enter an order that complies with *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

Findings of Fact:

{¶ 7} 1. On August 31, 2001, relator sustained an industrial injury while employed as a laborer for respondent Sauder Manufacturing Company ("Sauder"), a self-insured employer under Ohio's workers' compensation laws. The industrial claim was initially allowed for "right forearm tendonitis; bilateral shoulder sprain/strain."

{¶ 8} 2. The record before this court shows that Sauder endeavored to accommodate relator's medical restrictions and relator generally did light-duty work at Sauder through April 9, 2003.

{¶ 9} 3. Apparently, Sauder maintains a medical clinic at its plant where relator worked. Sauder medical clinic records show, for example, that on January 13, 2003, Randall J. Bowman, M.D., a Sauder clinic physician, released relator to return to work with restrictions.

{¶ 10} 4. Sauder's work accommodation policy is perhaps indicated in Dr. Bowman's note dated January 21, 2003:

Tim comes in for [follow-up] assessment[.] [H]e has been receiving physical therapy which he reports has been of limited success in alleviating his symptomatology. He has been given specific work restrictions to which it was felt that he could perform[.] [H]owever he states that his pain is to[o] great to even accommodate even those limited work responsibilities. He has been previously seen in the E.R. and they did not give any additional work

restrictions outside that were [sic] presented to him by ourselves. In discussing the situation with Tim we decided that # 1 we would discontinue his physical therapy since it appear[s] to be ineffective. # 2 I would speak to supervision regarding restrictive work activities that he can perform until this I[ndependent] M[edical] E[xamination]. # 3 He is having an IME by Dr. Hartwig to determine his ability to perform the work responsibilities present. We will communicate this to Tim and provide additional information once it is provided to us.

{¶ 11} 5. On January 30, 2003, relator was examined by orthopedist Robert H. Hartwig, M.D., upon referral by Dr. Bowman. In a letter to Dr. Bowman, dated January 30, 2003, Dr. Hartwig wrote:

With regard to the questions posed, the current diagnosis appears to be mid-thoracic pain with radiation into his upper extremities. I cannot determine a precise cause for the pain, which seems to be fairly well localized over the mid-thoracic vertebrae. I do not feel he has currently reached maximum medical improvement since his symptoms have not changed. The restrictions which are necessary are no overhead work, and I would certainly support no lifting over 20 pounds. Climbing should also be avoided, and the repetitive pulling and pushing restriction should be maintained. However, I feel that these restrictions would be difficult to implement in his current job description. My recommendation would be an x-ray study of the mid thoracic area as well as a bone scan to determine if there is any area of increased uptake.

{¶ 12} 6. On February 5, 2003, relator's supervisor at Sauder wrote to Sauder's human resources department:

Tim Good came in Monday night but I could not find any thing for him within that new restriction to do so I allowed him to go home. On Tuesday night I called him back to work and provided him with a job that is within his restriction but Tim refused to do it and said that he has so much pain he could not do anything. He went home and [sic] saying that he will bring the doctor's slip to us tomorrow.

{¶ 13} 7. On March 25, 2003, relator was examined at Sauder's request by Gregory A. Ornella, M.D. In his report, dated March 26, 2003, Dr. Ornella wrote:

Mr. Good reports that he initially went to see Dr. Bowman, the plant medical director, for evaluation. He notes that he was placed on restrictions which involved lighter work in the plant. * * *
* * *

Mr. Good reports that he is now scheduled to see Dr. Habusta, an orthopedic specialist in Toledo, Ohio, on April 10, 2003. He notes that he continues to

have pain in the left elbow and posterior left shoulder, especially with repetitive lifting or movement of the left upper extremity.

\* \* \*

Based on my examination at this time, Mr. Good is not capable of performing full-duty work. Necessary work restrictions should include no repetitive use of the upper extremities, no repetitive heavy grasping with the hands, and no lifting with the upper extremities at or above shoulder level. In addition, Mr. Good should not perform repetitive supination/pronation movements with the right forearm. These restrictions should be considered temporary in nature while Mr. Good undergoes further treatment. Temporary restrictions should involve the eight to twelve week period of additional treatment and can be modified based on Mr. Good's progress through treatment.

{¶ 14} 8. On April 10, 2003, relator was examined and treated by Steven F. Habusta, D.O. In a narrative report, dated April 10, 2003, Dr. Habusta wrote:

He was examined today. A lot of pain is present in the subacromial space with motion. There is also pain in the trapezius muscle that radiates to the deltoid and in the elbow, he has diffuse tendonitis both medially and laterally with evidence of a medial epicondylitis and what may be tennis elbow and also some lateral epicondylar pain.

\* \* \* I have injected his shoulder to see how he does. This was an injection in the subacromial space with a very positive provocative test with relief of a lot of his symptoms following the injection. I have asked him to see me for recheck in the next few weeks and we will see how he does.

Regarding his elbow, management of this may be entertained in the next couple of weeks if he does not respond to the shoulder. Hopefully, if the shoulder is improved, a lot of the pain down his arm will also improve.

My impressions are for a tendonitis of the rotator cuff and possible subacromial impingement secondary to overuse at work, also tendonitis of the elbow, which is becoming chronic in nature, again, secondary to the type of work he has done.

{¶ 15} Also on April 10, 2003, Dr. Habusta certified that relator must be "off work due to a possible rotator cuff tear."

{¶ 16} 9. On April 14, 2003, Dr. Habusta completed a C–84, on which he certified that relator is temporarily totally disabled from April 10, 2003 to an estimated return-to-work date of May 10, 2003.

{¶ 17} 10. On April 23, 2003, Dr. Habusta wrote a letter to Sauder's workers' compensation service company. In his letter, Dr. Habusta briefly commented on Dr. Ornella's report as well as his own report of April 10, 2003. Dr. Habusta concluded his letter:

I have him scheduled to see me for recheck examination. At that time, I will reassess him and see whether or not I feel he can return to work with any type of duty or if any other treatment should be started or any other diagnostic testing done. At that time, I will order what I feel appropriate.

{¶ 18} 11. On April 30, 2003, Sauder's Vice President of Human Resources, Marc W. Fruth, sent a letter to relator stating:

On March 25, 2003 Dr. Gregory Ornella, M.D., M.S. for the purpose of an independent medical examination related to your workers compensation claim, saw you. This report has been reviewed and the restrictions noted. I have also enclosed a copy of this report with this letter.

This letter is to inform you that you are being offered a position at Sauder Manufacturing Co. that meets your restricts [sic] as outlined by Dr. Ornella. The transitional light duty jobs at Sauder will meet these restrictions. These jobs will vary from time to time with regards to department and specific job function, but you will not be asked to do work outside your restrictions. This opportunity to return to work is available immediately upon receipt of this letter. If you wish to accept this job, please contact me directly at [Sauder] as soon as possible.

{¶ 19} 12. Apparently, relator did not accept Sauder's April 30, 2003 offer to return to work.

{¶ 20} 13. On September 18, 2003, relator moved for additional claim allowances and for TTD compensation beginning April 10, 2003, based upon C–84s from Dr. Habusta dated July 24 and August 20, 2003.

{¶ 21} 14. The record contains a C–84 from Dr. Habusta dated July 24, 2003. On the C–84, Dr. Habusta certifies a period of temporary total disability from April 10, 2003 to an estimated return-to-work date of August 18, 2003, based upon shoulder and elbow sprains.

{¶ 22} 15. The record contains a C–84 from Dr. Habusta dated August 20, 2003, on which TTD is certified beginning April 10, 2003 to an estimated return-to-work date of September 1, 2003. The basis for this certification is ICD–9 code 840.9.

{¶ 23} 16. Following an October 28, 2003 hearing, a district hearing officer ("DHO") issued an order additionally allowing the claim for "subacromial impingement of the left shoulder; medial epicondylitis of the left elbow." The DHO also awarded TTD compensation beginning April 10, 2003, based upon Dr. Habusta's C–84s.

{¶ 24} 17. Sauder administratively appealed the DHO order of October 28, 2003.

{¶ 25} 18. Sauder's appeal was heard by a staff hearing officer ("SHO") on January 22, 2004. Sauder's counsel submitted a memorandum captioned "Employer's Position Statement." In the memorandum, Sauder's counsel asserted:

Since the date of injury, the claimant had numerous and different restrictions, all of which Sauder accommodated. The job the claimant was last performing when he was taken off work by Dr. Habusta on 4/10/03 merely consisted of placing a one ounce screw into a fixture. He was not required to do any lifting.

There is no indication in the memorandum as to the source of counsel's factual assertion regarding relator's job duties at Sauder.

{¶ 26} 19. Following the January 22, 2004 hearing, the SHO issued an order indicating that Mr. Fruth, Vice President of Human Resources, appeared with counsel for Sauder. The SHO's order states that the DHO's order is "modified." The SHO disallowed the claim for "medial epicondylitis of the left shoulder," but allowed the claim for "subacromial impingement syndrome of the left shoulder." In the last two paragraphs of the order, the SHO addresses relator's request for TTD compensation:

It is the finding of this Staff Hearing Officer that: the self-insured employer made work available to the injured worker which was suitable employment within his physical capabilities. In fact, the injured worker had actually performed said employment through the Transitional Worker Center at Sauder Woodworking Company and Sauder Manufacturing Company through 4/9/2003. It is the finding of this Staff Hearing Officer that said transitional work was within the injured worker's restrictions.

Therefore, it is the finding of this Staff Hearing Officer that the injured worker's request for payment of temporary total disability compensation, for the period from 4/10/2003 through 10/30/2003, is hereby DENIED, as the injured worker was capable of returning to suitable employment within his physical capabilities for the period in question.

(Emphasis sic.)

{¶ 27} 20. On February 19, 2004, another SHO mailed an order refusing the appeals of relator and Sauder.

{¶ 28} 21. On October 1, 2004, relator, Timothy S. Good, filed this mandamus action.

Conclusions of Law:

{¶ 29} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 30} The syllabus of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, states:

In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.

{¶ 31} R.C. 4123.56(A) provides that the payment of TTD compensation shall not be made for the period "when work within the physical capabilities of the employee is made available by the employer."

{¶ 32} Supplementing the statute, Ohio Adm.Code 4121-3-32(A)(6) provides:
"Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

{¶ 33} Ohio Adm.Code 4121-3-32(B)(2)(d) provides that TTD compensation may be terminated "[u]pon the finding of a district hearing officer that the employee has received a written job offer of suitable employment."

{¶ 34} For a job offer to be sufficient to preclude TTD compensation, it must be clear that the job is within the claimant's restrictions. *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.* (2000), 90 Ohio St.3d 428, 739 N.E.2d 324.

{¶ 35} Here, relator suggests that the SHO's finding that Sauder "made work available to the injured worker which was suitable employment" appears to be premised upon the April 30, 2003 job offer from Mr. Fruth. Based upon that assumption, relator points out that the order fails to cite the evidence relied upon, i.e., the April 30, 2003 letter. Relator also argues that the order fails to cite any medical evidence relied upon to support the restrictions upon which the job offer is based (even though the letter states that the restrictions are based upon Dr. Ornella's report). Citing *Coxson* and this court's decision in *State ex rel. Professional Restaffing of Ohio, Inc. v. Indus. Comm.*, 152 Ohio App.3d 245, 2003-Ohio-1453, 787 N.E.2d 99, relator at least suggests that the SHO failed to address key issues of whether the April 30, 2003 job offer actually meets relator's medical restrictions and whether the job offer itself was sufficiently specific.

{¶ 36} On the other hand, at oral argument before this magistrate, Sauder's counsel argued that the SHO's order of January 22, 2004 does not purport to be premised upon the April 30, 2003 job offer. According to Sauder's counsel, the SHO's finding that Sauder "made work available to the injured worker which was suitable employment" is a reference to the work that Sauder had made available

to relator prior to April 10, 2003, when relator stopped working upon the advice of Dr. Habusta. According to Sauder's counsel, the SHO relied upon Sauder's history of accommodating relator's medical restrictions to support a conclusion that Dr. Habusta's certification of TTD as of April 10, 2003, is not credible.

{¶ 37} In the view of the magistrate, the opposing views of counsel as to the meaning of the SHO's order simply highlights the ambiguity of the order. An order that is ambiguous should be returned to the commission for clarification because it prevents this court from conducting a meaningful review. *State ex rel. Buttolph v. Gen. Motors Corp., Terex Div.* (1997), 79 Ohio St.3d 73, 75, 679 N.E.2d 702. The ambiguity in the order violates the requirements set forth in *Noll.*

{¶ 38} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate that portion of its order that addresses the issue of TTD compensation, and to enter an amended order that adjudicates relator's request for TTD compensation in compliance with *Noll.*